Frantz DAVIS V35410
High Desert state prison
P.o. Box 3030 C8/217
Susanville CA, 96127



FILED
CLERK, U.S. DISTRICT COURT
MAY - 6 2008
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

IN THE UNITED STATES DISTRICT
COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA  WESTERN DIVISION

Frantz DAVIS,
            Respondent,
                vs.

TOM Felker WARDEN (A),
            Defendant,

CV 07-1974 PA (FFM)

Reply to First Amended
Petition For Writ of
Habeas Corpus:

Argument
I.

Reversal of Appellants convictions is warranted for a
Violation of the sixth Amendment right to self-Represe-
ntation and the fourteenth Amendment right to Due
Process because Appellant made an unequivocal and
timely Request to represent himself at trial and the

purported withdrawal of the motion was ineffective
as it was caused by Improper Coercion from the trial
Court's Repeated advice to withdraw the motion.

## A. Introduction And Procedural Background

On January 8, 2004, appellant made a timely and explicit
request to represent himself (RT E16.) The trial court
responded by providing appellant with a questionnaire
entitled "petition to proceed In Propia Persona" and by
explicitly advising appellant against exercising the consti-
tutional right of self-representation.
(RT E16-E17; CT 107-111.) The trial court stated, in part:

Now, WHAT I'M PROVIDING YOU WITH IS A QUESTIONNAIR
THAT WILL ASK YOU A NUMBER OF THINGS ABOUT REPRESENTIN
YOURSELF. AND LET ME GO ON THE RECORD BY SAYING, SIR,
THAT IT IS NOT IN YOUR BEST INTEREST AND I DON'T
RECOMEND, IN FACT I RECOMMEND AGAINST YOU REPRE-
SENTING YOURSELF. (RT E16-E17 (Emphasis added.)

After the prosecutor entered the courtroom, the trial court
again explicitly advised appellant not to exercise the Constitu-
tional right of self-representation stating:

I'M ADVISING THE DEFENDANT AT THIS TIME THE COURT DOES
NOT RECOMMED THAT YOU REPRESENT YOURSELF. I'M RECOMMEND

It's NOT IN YOUR BEST INTEREST TO DO SO AND THE FORM THAT I'M GIVING YOU WILL GIVE YOU SOME INFORMATION AND ASK YOU SOME QUESTIONS... (RT E18 (emphasis added) The trial court then warned appellant at length about the specific dangers of self-representation. (RT E18-E20.) The court noted that it was approximately 11:30 a.m., the proceedings would be adjourned until the following day, and appellant would be given that time to complete the questionaire entitled "petition to proceed In Propria Persona". (RT E20.) Before concluding the proceedings, however, the Court further advised appellant, IF THERE'S ANY POINT IN TIME WHERE YOU LOOK AT THAT (FORM) AND THINK "I SHOULD KEEP MY ATTORNEY" THEN THAT'S WHAT YOU SHOULD DO. (RT E20.) Notwithstanding the trial court's advice that appellant should not exercise the constitutional right of self-representation, appellant persisted in his request to represent himself at trial. He completed the questionnaire entitled "Petition to proceed In Propria Person" by placing his initials next to the various paragraphs on the form and by signing and dating the form. (CT 107-111.) One of the paragraphs that appellant initialed states:

I understand that it is the advice and recommendation of this court that I do not represent myself, and (that I) accept counsel appointed by the court. (CT 110.) The following day, January 9, 2004, the proceedings began with the following colloquy between

The court and appellant in which appellant's [illegible]
constitutional right of self-representation.

THE COURT: MR. DAVIS, THIS IS THE DATE WE SET FOR YOU TO COME BACK AND LET US KNOW IF YOU WANTED TO PROCEED WITH YOUR REQUEST TO BE YOUR OWN LAWYER.

DEFENDANT: YES, SIR.

THE COURT: HAVE YOU FILLED OUT THAT QUESTIONN-AIRE?

DEFENDANT: YES, SIR.

THE COURT: AND IT'S STILL YOUR WISH TO BE YOUR OWN LAWYER?

DEFENDANT: YES, SIR. (ER F1-F2)

The trial court then stated that if appellant persisted in his request for self-representation there would be no delay of the trial date (RT F2-F5) The trial court continued

THE COURT: ... AND WHEN I GAVE YOU THAT QUESTI ONNAIRE THAT WAS FOR YOU TO BE (SIC) TO MAKE YOU AWARE OF THAT DECISION IN THAT YOU'RE HURTING YOURSELF.

DEFENDANT: I UNDERSTAND. (RT F6.)

investigation into the gunshot residue test. (RT F7.) The court inquired of counsel and then told appellant that the test had not yet been conducted and "That it's likely that you're not going to be granted additional time to recieve that...(RT F10.) Appellant explained that the gunshot residue test would be a significant part of his defense because he was charged with discharging a firearm. (RT F10-F11) without resolving the issue regarding whether appellant would recieve the gunshot residue test results prior to trial, the trial court conducted an on-the-record review of the questionnaire entitled "Pettition to Proceed in Propria Persona", engaged in a lengthy discussion of the disadvantages of self-representation, and presented appellant with a scenario in which he would be convicted if he chose to represent himself. (RT F11-F24.)

Finally, the court engaged appellant in the following colloquy:

THE COURT: ... AND YOU'RE GOING TO GET UP AND AT THAT POINT AFTER YOU RESTED AND EVERBODY HAS RESTED, THEN YOU GET TO ARGUE AND THE PROSECUTO GETS UP AND HE WILL GO INTO THIS SPEECH 'CAUS HE'S DONE THIS MANY TIMES, AND IT WILL BE THE KIND OF SPEECH WHERE THE JURY IS GOING TO HANG ON HIS EVERY WORD AND LISTEN TO EVERYTHIN

WHAT (SIC) HE SAYS. HE'S GOING TO TELL THEM, I

BELIEVE MY EVIDENCE, AND MY EVIDENCE SAYS,
THAT MR. DAVIS IS GUILTY BEYOND A REASONABLE
DOUBT. AND THEY'RE ALL GOING TO SIT THERE AND
SOME OF THEM NOD THEIR HEADS, MAYBE NOT, AND
THEN YOU'LL GET UP, IT'S YOUR TURN TO ARGUE,
AND YOU'RE GOING TO GET UP THERE AND AS I
ALREADY TOLD YOU, YOU CAN'T GET UP THERE AND
SAY I'M REPRESENTING MYSELF, SO YOU CAN YOU
CUT ME SOME SLACK. THAT'S NOT GOING TO HAPPEN
SO YOU'RE GOING TO GET UP THERE, TELL YOUR SIDE
OF THE STORY, BUT YOU'RE NOT GOING TO HAVE ANY
EVIDENCE TO BACK THAT UP, AND IF YOU'RE NOT
GOING TO HAVE A BUNCH OF WORDS TO GIVE THEM
AND YOU'RE AN ARTICULATE PERSON, YOU APPEAR TO
BE AN INTELLIGENT PERSON, BUT YOU'RE NOT GOING
TO BE A MATCH FOR THE ARGUMENT OF A TRAINED
PROSECUTOR. AND YOU'RE GOING SAY, PLEASE FIND
ME NOT GUILTY. THEY HAVEN'T PROVEN THEIR CASE. AND
THEN THEY'RE GOING -- THEN YOU'RE GOING SIT DOWN,
AND THEN THE PROSECUTOR GETS UP AGAIN. HE GETS

THE LAST WORD, HE GETS TO GET UP AND SAY, LADIE AND GENTLEMAN, THE DEFENDANT HAS PUT ON NO DEFENSE. I PUT ON A CASE THAT PROVES BEYOND A REASONABLE DOUBT THAT MR. DAVIS DID WHAT HE IS ACCUSED OF. YOU HAVE TWO CHOICES HERE: YOU CAN FIND THE DEFENDANT GUILTY OR NOT GUILTY, BUT EVERYTHING THAT YOU KNOW, ABOUT COMMON SENSE TELLS YOU THAT THE EVIDENCE THAT'S PRESENTED ON MY SIDE IS COMPELLING AND CONVINCING BEYOND A REASONABLE DOUBT. SO MR. DAVIS IS GUILTY. AND THEN YOU DON'T GET TO SAY ANOTHER WORD. THAT'S THE END OF IT. THEN THEY GO BACK AND THEY COME BACK IN FIVE MINUTES AND THEY SAY GUILTY. OKAY. NOW, THAT PART AT THE END ABOUT FINDING YOU GUILTY I JUST THREW IN THERE, BUT WE REALLY DON'T KNOW WHAT THEY WILL DO. BUT LET'S SAY THEY DO FIND YOU GUILTY. SO NOW, THEY'RE GONE AND WE GET TO THE MATTER OF SENTENCING, AND THE PROSECUTOR ALREADY SAID MY HANDS ARE TIED. IF YOU ARE CONVICTED, YOU GO TO PRISON FOR LIFE, AND THAT'S THE END OF THE STORY.

DEFENDANT: OKAY.

THE COURT: IS THAT SOMETHING YOU WANT TO DO ON YOUR OWN?

DEFENDANT: NO.

THE COURT: DO YOU HAVE FAMILY?

DEFENDANT: YES, SIR.

THE COURT: DO YOU HAVE PEOPLE THAT YOU ARE CONCERNED ABOUT?

DEFENDANT: YES, SIR.

THE COURT: OKAY. DO YOU THINK THAT THEY WOULD WANT YOU TO GO THROUGH ALL OF THIS UNASSISTED?

DEFENDANT: (NODDING.)

THE COURT: I MEAN, YOU DON'T HAVE TO ANSWER THAT

DEFENDANT: I KNOW.

THE COURT: BUT I'M JUST PUTTING IT IN YOUR MIND, TOO.

DEFENDANT: I UNDERSTAND. (RT F22-F24.)

THE COURT: AFTER HEARING EVERYTHING I'VE SAID TO YOU, AND ALL OF THIS, DO YOU STILL WANT TO GO AHEAD WITH REPRESENTING YOURSELF?

THE COURT: OKAY, YOU DON'T?

DEFENDANT: NO.

THE COURT: I THINK THAT'S A REASONABLE DECISION. IN FACT, YOU CONFIRMED WHAT I'VE BEEN THINKING IN TALKING TO YOU THAT YOU ARE -- YOU ARE AN INTELLIGENT PERSON. I THINK THAT'S A GOOD CHOICE ON YOUR PART. (RT F26-F27.)

As Explained below, appellant was unlawfully deprived of his sixth Amendment right to represent himself, thereby requiring reversal of his convictions, because appellant made an unequivocal and timely request to represent himself at trial and the purported withdrawal of the motion was ineffective as it was caused by improper coercion from the trial court.

3. APPELLANT WAS UNLAWFULLY DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO REPRESENT HIMSELF, THEREBY REQUIRING REVERSAL OF HIS CONVICTIONS, BECAUSE THE PURPORTED WITHDRAWAL OF THE FARETTA MOTION WAS INEFFECTIVE

Every criminal defendant who wishes to act as his or her own attorney has a constitutional right to do so under the sixth and Fourteenth Amendments to the federal Constitution.

(Faretta v. California (1975) 722 U.S. 706, 80 L.75 L.Ed. 2d 562, 95 S.Ct. 2525]; People v. Jones (1991) 53 Cal. 3d 1115, 1141; People v. Burton (1989) 48 Cal. 3d 843, 852.) The right is absolute The Court explained: The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense... <u>The right to defend is given directly to the accused; For it is he who suffers the consequences if the defense fails.</u>

-Faretta v. California, supra, 95 S.Ct. at p. 2533 (emphasis added.)

Apply Farretta, the federal courts have uniformly held that a motion for self-representation is timely as a matter of law, and must be granted, if made before the jury is impaneled. (See, e.g., Armant v. Marquez (9th Cir. 1985) 772 F.2d 552, 555; Fritz v. Spalding (9th Cir. 1982) 682 F.2d 782, 784; Maxwell Sumner (9th Cir. 1982) 673 F.2d 1031, 1036; Chapman v. United States (5th Cir. 1977) 553 F.2d 886, 894; United States v. Dougherty (D.C. Cir. 1972) 473 F.2d 1113, 1124; United States ex rel. Maldonado Denno (2d Cir. 1965) 348 F.2d 12, 16.) The California state rule is that the defendant should make an unequivocal assertion of the right within a resonable time prior to the commencement of trial. (People v. Horton (1995) 11 Cal. 4th 1068, 1107; Cf., People v. Marshall (1997) 15 Cal. 4th 1, 22-23, 2; -assertion of right ineffective where defendant vacillates]

) People v. Windham (1977) 19 Cal. 3d 121, 127-128f . "In order to invoke the Constitutionally mandated unconditional right of self-representation a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial"].)

In Faretta v. California, supra, 422 U.S 806, the Supreme court noted that the defendant was "literate, competent, and understanding, and that he was voluntarily exercising his informed free will." (Id., 422 U.S. at p. 835.) However, the court in no way suggested that defendants must be "competent" at lawyering in order to exercise there sixth Amendment right to self-representation. In addition, from the context of the sentence in Faretta it appears that the court used the term "competent" in the sense of "competence to stand trial." The "competent" language in Faretta is directed at the "knowing and voluntary" nature of the defendant's choice, not at the ability of the defendant to mount a successful defense. (Id, 422 U.S. at pp. 834-836.) Mc Kaskle v. Wiggins (1984) 465 U.S 68, 79 L.Ed. 2d 122, 104 S.Ct. 944 added the requirement that def-endants must be "able and willing to abide by rules of procedure and courtroom protocal." (Id., 465 U.S at p. 173.) However, Mc Kaskle cannot be interpreted to require that defendants be able to do a competent job at representing themselves. In Savage v. Estelle (9th Cir. 1990) 924 F. 2d 1459 (as amended), cert. denied, 501 U.S 1255, 115

L. Ed. 2d 1067, 113 S. Ct 2700 (1997), the United States Court of Appeals for the Ninth Circuit noted that the "exercise of the Faretta right has never been contingent on an accused's representing himself well." (Id. at p. 1466, fn. 4.)

Here, the trial court improperly interfered with appellant's exercise of the constitutional right of self-representation by coercing the withdrawal of that right after appellant timely and unequivocally exercised the right, thereby rending the purported withdrawal ineffective.[2] Appellant recognizes that when the defendant moves to dismiss counsel and undertake his or her own defense, he or she "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." (Faretta v. California, supra, 422 U.S. at p. 835.) The trial court went far beyond simply making appellant aware of the dangers and disadvantages of self-representation - the trial court explicitly, and repeatedly, advised appellant against exercising the constitutional right of self-representation. To appellant's knowledge there is no reported decision affirming a purported withdrawl of a Faretta motion under the circumstances presented here. Recently, in People v. Snow (2003) 30 Cal. 4th 43, 68-70 and People v. Jenkins (2000) 22 Cal. 4th 900, 958-961, in the context of direct appeals from judgments of death, our California Supreme Court addressed the issue of whether a defendant's purported withdrawal of a Faretta motion was ineffective. In Snow, defendant moved to

represent himself, but before the court ruled on the motion he withdrew it. On appeal, Snow argued that the withdrawal was ineffective because it was motivated by confusion over whether the trial court was willing to appoint one of his current attorney's as advisory counsel and by counsel's unfulfilled promise to try to get him co-counsel status. However, the record belied Snow's ~~~~~ contention. The Court found that the "[ trial court twice expressly stated that if defendant represented himself h. could choose either Jacke or Miller as advisory counsel. Defendant twice indicated that he understood the court, but nonetheless wished to withdraw the motion." (People v. Snow, supra, 30 Cal. 4th at p. 69) Snow ~~~ is thus readily distin- vishable from the instant case because there the record simply did not support defendant's contention that the ~~~~~ withdrawal of the Faretta motion was motivated by confusion of the trial court's willingness to appoint advisory counsel. In People v. Jenkins, supra, the ~~~~ defendant argued that the trial court denied him the right to represent himse f at the guilt phase of the trial by, among other things, coer cing him to withdraw his pretrial motion to represent himsel; (People v. Jenkins, supra, 22 Cal. 4th at pp. 958-959.) The defend- ant moved to dismiss his counsel and undertake self-repr cresentation. Prior to ruling on the motion, however, the trial court "explained that defendant's concern over

of preparing for a capital trial I would be truly overwhelming for an individual in custody and without legal training." (Id. at pp. 959-960.) The trial court then told defendant, "I could not advise you strongly enough of what an impossible situation that would be for you." The trial court further "urged defendant not to "decide lightly." (Id. at p. 960) The defendant then agreed to further discuss the matter with his counsel the following day in county Jail. (Ibid.) Defendant added, "but I still want the record to show that I'm still thinking about 80 percent of my mind of just taking this whole case pro per. And I haven't completed that decision yet until I speak with (trial defense counsel) Mr. Price and see what he has to say tommorrow." (Ibid.) After speaking the trial defense counsel, and securing from the trial court a continuance in order to complete the investigation that defendant felt should be conducted in advance of the trial, defendant withdrew his request for self-representation. (Id. at p. 961) The court held that the record establishes "that the court did not coerce defendant into withdrawing his motion." (Ibid.) The court reasoned:

... Rather, the court properly advised defendant of the pitfalls of self-representation. Contrary to defendant's contention, the court did not suggest that if defendant persisted in representing himself, he would face a hostile court. Although defendant's motion for self-representation was based in part upon a concern that defense counsel had failed to investigate certain proposed penalty phase evidence, we are unpersuaded that the court coerced defendant into withdrawing the motion by making a false promise that a continuance would be granted between the guilt and penalty

with defense counsel rather than the court's comments that persua-
ded defendant to withdraw his motion for self-representation.

~ Ibid. (emphasis added).] The instant case stands in stark contra:
to Snow and Jenkins. Defendant Snow's argument that the withdra
wal of the Faretta motion was ineffective because it was motivated
by confusion over whether the trial court was willing to appoint one
of his current attorneys as advisory counsel simply was not supporte
by the record. Defendant Jenkin's argument that the trial court hac
coerced him into withdrawing his otherwise timely Faretta motion
was rejected because the California Supreme Court found that (1)
the trial court properly advised the defendant of "the pitfalls of
self-representation" and (2) it was defendant's consultation with
counsel that caused him to withdrawing ~~his~~ his motion. In cont-
rast appellant's claim that he was coerced into withdrawing his
Faretta motion is amply supported by the record, thereby distinguish-
ing Snow. Moreover, in contrast to Jenkins, the record reveals that
the trial court (1) repeatedly and explicitly advised appellant to
withdraw the motion and (2) talk appellant into withdrawing the
motion without considering whether appellant should discuss the
matter with counsel. In contrast to the above-quoted and under
scored rationale from the California Supreme Court in Jenkins
(set forth in the preceding paragraph), "it is evident that it was
not defendant's consultation with defense counsel but, rather, the
trial court's comments and explicit advice that persuaded him to
withdraw the motion for self-representation." The coercive
affect of the trial judge's explicit, repeated advice to appellant
to withdraw the ~~farretta~~ motion cannot be ~~gained~~ gainsaid. In the
analogous context of considering the affect of the judge's comments
to the jury (i.e., other lay persons that are similarly unfamiliar wit

"[I]nstruction by the trial court would weigh more than a thousand words from the most eloquent defense counsel." (People v. Mathews (1994) 25 Cal. App. 4th 89, 99; see Bollenbach v. United States (1946) 326 J.S. 607, 612 [90 L. Ed. 350] ["The influence of the trial Judge on the jury is necessarily and properly of great weight,... and jurors are ever watchful of the words that fall from him."]; United States v. Wolfson (5th Cir. 1978) 523 F. 2d 216, 221 [Judge's words " carry an authority bordering on the irrefutable.' [citation] "]; Quercia v. United States (1933) 289 U.S. 466, 470 [77 L.Ed. 1321; 53 S. Ct. 698] "[[I]t is obvious that under any system of jury trials the influence of the trial Judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling"], quoting Starr v. United States (1894) 153 U.S. 614, 626 [38 L. Ed 2d 841; 14 S. Ct. 919] "emphasis added]; People v. Cook (1983) 33 Cal. 3d 400, 413; people v. Rodriguez (1986) 42 Cal. 3d 730, 770) Finally, the coercive nature of the trial court's actions in this case deprived appellant of the constitutional right of due process. The trial court's ~~own~~ interference with appellant's exercise of the constitutional right of self-represent ation - by coercing the withdrawl of that right after appellant timely and unequivocally exercised the right - is analogous to other instances where either the court or the government takes action that impeded a defendant's due process right. (see, e.g., Webb v. Texas (1972) 409 J.S. 95 [witness intimidated by judge's overzealous advisement regarding consequences of perjury]; People v. Claxton (1982) 129 Cal. App. 3d 638, 662 [a conviction founded upon testimony coerced by the state violates due process]; United States v. Goodwin (5th Cir. 1980) 625 F. 2d 693, 703 [allegations that prison offi-

ty if he testified for defense; Threats against witnesses are intolerable. Substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant."]; United States v. Henricksen (5th Cir. 1977) 564 F.2d 197 [reversal required where state's plea agreement with witness/codefendant precluded testifying); United States v. Hammond (5th Cir. 1979) 598 F.2d 1008 [reversal required where witness discouraged from testifying by threat of "trouble" in pending case]; United States v. Morrison (3rd Cir. 1976) 535 F. 2d 223 [reversal required where prosecutor intimidated witness by advising her of potential charges, including perjury].)

Accordingly, since appellant made an unequivocal, timely motion for self-representation prior to trial, and since the record demonstrates that it was the court's comments and explicit advice that persuaded him to withdraw the motion, the purported withdrawal was invalid, thereby requiring reversal of appellant's conviction for a violation of the constitutional right of self-representation. (See People v. Joseph (1983) 34 Cal. 3d 936, 946-948 [the erroneous denial of a timely asserted pretrial Faretta motion is reversible per se; the defendant need not show prejudice]; People v. Ruiz (1983) 142 Cal. App. 3d 780, 788.)

## II.

APPELLANT'S CONVICTION FOR ASSAULT WITH A FIREARM (COUNT 3) MUST BE REVERSED BECAUSE THE OFFENSE IS A LESSER INCLUDED OFFENSE TO THAT WHICH APPELLANT WAS CONVICTED IN COUNT 1 (SECOND DEGREE ROBBERY WITH TRUE FINDING ON THE FIREARM USE AND GREAT BODILY INJURY ENHANCEMENTS)

Appellant was charged in count 1 with the robbery (§ 211) of Anthony Malone. It was further alleged in connection with count 1 that appellant personally discharged a firearm and inflicted great bodily injury upon Anthony Malone (§§ 12022.53, subd. (c), and 12022.7, subd. (a), respectively). (CT 44-45.) Appellant was charged in count 3 with assault with a firearm on Anthony Malone (§ 245, subd. (a)(2)), a charge arising out of the same facts as those contained in count 1 and the enhancement allegations as to count 1. (CT 45; Appellant's Opening Brief, pp. 45.) He was found guilty as charged and the enhancement allegations were found true. (CT 201-202; RT 229-230)

"[M]ultiple convictions may not be based on necessarily

included offenses. (People v. Pearson (1986) 42 Cal. 3d 351, 355; People v. Moran (1970) 1 Cal. 3d 755, 763 [when jury expressly finds defendant guilty of both greater and lesser offenses and evidence supports verdict as to greater offense, conviction of that offense is ~~the~~ controlling, and conviction of lesser offense must be reversed]; United States v. Crawford (9th Cir. 1978) 576 F. 2d 794, 800, cert. denied 439 U.S. 851 (1978)[if the jury convicts on the greater offense a conviction on the lesser included offense cannot stand.])

For purposes of the rule proscribing multiple conviction, "[U]nder California Law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (People v. Breverman (1998) 19 Cal. 4th 142, 154, Fn. 5.) Thus, the following two issues are ~~now~~ presented here (1) whether the offense of robbery and the enhancements found true in connection with the offense of robbery (collectively, the "robbery charge"), as alleged in the information, include all of the elements of the offense of ~~assault~~ assault with a firearm such that the robbery charge cannot be committed without also committing the offense of assault with a firearm; and, (2) whether enhancement allegations are to be considered in determining a lesser included offense.

A. THE ROBBERY CHARGE INCLUDES ALL OF THE
ELEMENTS OF ASSAULT WITH A FIREARM AS ALLEGED
IN THE INFORMATION

The information alleges in count 1 that on August 31, 2002 appellant committed the offense of second degree robbery by "unlawfully, and by means of force and fear take personal property from the person, possession, and immediate presence of Anthony M. Malone." (CT 44.) It was further alleged in connection with count 1 that appellant "personally and ~~intentionally~~ intentionally discharged a firearm" and "personally inflicted great bodily injury upon Anthony Malone..." (CT 45-46.) The information alleges in count 3 that on August 31, 2002, the offense of assault with a firearm was committed by appellant "who did willfully and unlawfully commit an assault on Anthony M. Malone with a firearm." (CT 45.)

The elements of assault with a firearm, under section 245 subdivision (a)(2) include an assault, which requires the intent to commit a battery (i.e., the willful and unlawful use of force or violence upon the person) and the present ability to do so, and the use of a firearm. (People v. Wolcott (1983) 34 Cal. 3d 92, 99.) The factual allegations contained in the robbery charge — that appellant committed the robbery by both intentionally discharging a firearm and personally inflicting great bodily injury upon Anthony Malone—

upon Malone with a firearm (i.e., assault with a firearm).
Accordingly, the robbery charge includes all of the elements
of assault with a firearm as alleged in the information.

B. ENHANCEMENT ALLEGATIONS ARE TO BE CONSI-
DERED IN DETERMINING A LESSER INCLUDED
OFFENSE.

IN the post-Apprendi, [2] post-Blakely [3] world, when
considering lesser included offenses under the accusatory
pleading test, enhancement allegations must be considered
additional elements of the underlying offense. As expla-
ined below, although our California Supreme Court has not
directly addressed this issue in the post-Appendi context,
it's recent ruling People v. Seel (2004) 34 Cal 4th 535, which
interpreted and applied Apprendi v. New ~~New~~ Jersey, supra,
530 U.S. 466, implicitly overruled People v. Wolcott, supra,
34 Cal. 3d at pp. 100-101 [ holding that an enhancement
allegation is not be considered in determining a lesser
included offense]. [4] In people v. Wolcott, supra, 34 Cal. 3d
92, the California Supreme Court held that the offense
of assault with a deadly weapon was not a lesser
included offense under a charge of robbery with
enhancement for use of a firearm because a special
allegation could not be considered in determining a lesser
included offense. (Id. at pp. 100-101.) The court concluded

should not be considered in determining (a) lesser included offense." (Ibid.)

Almost two decades later, the Supreme Court in Apprendi considered a challenge to a New Jersey hate crime statute. The statute required the trial Judge to determine at sentencing if the crime ~~statute was committed with the intent~~ was motivated by "a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." (Apprendi v. New Jersey, supra, 120 S.CT. at p. 2351.) If the court made such a statutory finding, it could impose an "expanded" prison term. (Ibid.) The hate crime statute thus permitted the judge to impose an additional term of imprisonment beyond the maximum sentence prescribed for the offense for which the defendant was convicted. (Ibid.)

Although the New Jersey Supreme Court characterized the hate crime enhancement as a "sentence factor," the Supreme Court held that the enhancement was an element of the offense, which should have been considered by the jury. (Id.) at pp. 2353, 2363.) The Supreme Court concluded, "other then the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.... 'It is

jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." (Id. at pp. 2362-2363.) The Supreme Court explicitly held that "When the 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense." (Id. at p. 2367, fn. 19 [italics added].)

After Apprendi, terms such as "offense" and "elements" and "sentence enhancement" and "sentencing factors," are "conclusions, not reasons for a conclusion." [United States v. Williams, Jr. (5th Cir. 2003) 343 F.3d 423, 432-433, citing United States v. Gonzales (5th Cir. 2003) 327 F.3d 416, 419.]

"Apprendi was quite clear in likening an enhancement to an element of the underlying offense, rather than to a separate criminal offense." (People v. Scott (2001) 91 Cal. App. 4th 1197, 1209.) In People v. Seel, supra, 34 Cal. 4th 535, our California Supreme Court decided

premeditated murder) "double Jeopardy protections preclude a retrial of the premeditation allegation (§ 664 (a)) after an appellate finding of evidentiary insufficiency." (Id. at p. 541.) The court held that in light of Apprendi although section 664, subdivision (a) is designated a penalty provision it constitutes an element of an offense for double Jeopardy purposes. The Court reasoned that the conclusion was compelled by the fact that the premeditation enhancement allegation "effectively placed defendant in Jeopardy for an "offense' greater than attempted murder." (Id. at p. 550) By parity of reasoning, it presented with the opportunity our California Supreme Court would now overrule Wolcott and hold that an enhancement allegation constitutes an element of the offense for purposes of determining lesser included offenses under the accusatory pleading test. This new rule would be compelled, as in Seel, by the fact that enhancement allegation places the defendant in Jeopardy for an "offense" greater than simply the underlying charged offense and thus must be considered part of the charged offense.

Conclusion

For the reason set forth above, appellant respectfully request that his conviction for assault with a firearm (count 3) be reversed.

(DATE)
4/28/08

Respectfully Submitted,

Frantz Davis