UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FRANTZ DAVIS,<br><br>    Petitioner,<br><br> v.<br><br>TOM FELKER, WARDEN,<br><br>    Respondent.<br>_____ | NO. CV 07-1974 PA (FFM)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and General Order No. 194 of the United States District Court for the Central District of California.

**I.  PROCEEDINGS**

Petitioner Frantz Davis, a prisoner in the custody of the California Department of Corrections, challenges a conviction in the Los Angeles County Superior Court (Case No. GA050726) by means of this First Amended Petition for a Writ of Habeas Corpus by a Person in State Custody ("First Amended Petition" or "FAP").  On March 11, 2008, respondent filed an Answer to First Amended Petition and Memorandum of Points and Authorities ("Answer").  On May 6, 2008, petitioner filed a Reply to the Answer ("Reply").

The matter stands submitted and ready for decision. For the reasons that follow, the Court recommends that the First Amended Petition be denied and that this action be dismissed with prejudice.

## II. PROCEDURAL HISTORY

Following a bench trial, on March 16, 2004, petitioner was convicted of robbery (Penal Code § 211) with enhancements, personally and intentionally discharging a firearm which caused great bodily injury, and assault with a firearm (Penal Code § 245(a)(2). (Lodged Doc. No. 5 at 201.) The trial court sentenced petitioner to a term of twenty-six years in prison. (*Id.* at 243.)

Petitioner appealed his conviction before the California Court of Appeal, presenting claims of: (1) a violation of petitioner's sixth amendment right to self-representation and fourteenth amendment right to due process due to the trial court's improper coercion; and (2) a violation of California law for his convictions for both a greater offense and lesser included offense. (Lodged Doc. Nos. 10-11.) On September 28, 2005, the Court of Appeal affirmed the judgment. (Lodged Doc. No. 13.)

Petitioner filed a petition for review before the California Supreme Court. (Lodged Doc. No. 14.) On December 14, 2005, the California Supreme Court summarily denied the petition for review. (Lodged Doc. No. 15.)

On March 7, 2007, petitioner filed a habeas petition in the Los Angeles County Superior Court. (Lodged Doc. No. 1.) Petitioner then filed a second habeas petition in the Los Angeles County Superior Court on March 27, 2007. (Lodged Doc. No. 2.)

Petitioner also filed the initial Petition for Habeas Corpus in this Court on March 26, 2007. This Court dismissed the initial habeas petition for lack of personal jurisdiction due to petitioner's failure to name the correct respondent. On May 11, 2007, petitioner filed the First Amended Petition. On June 11, 2007, respondent moved to dismiss the First Amended Petition on the basis that petitioner had failed to exhaust his state remedies as he had two pending state habeas petitions. The Los

Angeles Superior Court denied the state habeas petitions on June 20, 2007. Accordingly, this Court denied the motion to dismiss on February 1, 2008, on the basis that it was moot.

### III.  FACTUAL BACKGROUND

On direct review, the California Court of Appeal, noting that petitioner did not challenge the sufficiency of the evidence, summarized the factual background as follows:

> [On August 31, 2002, t]he victim, Anthony Michael Malone, had just cashed his payroll check and was returning to his car when [petitioner] approached him from behind.  Before Malone could turn around [petitioner] placed him in a choke hold and put a gun to his head. [Petitioner] threatened to "dome" Malone if he did not "break [him]self," in other words, [petitioner] threatened to shoot Malone if he did not give up his money.  Malone removed a portion of the money and tossed it over his shoulder, which temporarily distracted [petitioner].  Malone took advantage of this distraction and grabbed [petitioner's] arm.  A lengthy struggle ensued.  During the struggle [petitioner] fired one shot which scorched Malone's face.  [Petitioner] then placed his gun to Malone's back and said "This is for you bitch."  [Petitioner] fired a round which lodged in Malone's back.  The bullet was still lodged in Malone's back at the time he testified.
>
> Prior to a jury being impaneled, but nearly a year after the preliminary hearing was held, [petitioner] made a *Marsden* motion to have new counsel appointed.  The court denied this motion and [petitioner] immediately followed it with a *Faretta* motion to represent himself.  The trial judge provided [petitioner] with a questionnaire entitled "Petition to Proceed in Propria Persona," which outlined the disadvantages of self

1 representation. The judge told [petitioner] to read and initial the
2 questionnaire and to return with it the next day for discussion.
3 When [petitioner] returned to court the next day the trial judge
4 elaborated on the questionnaire and a lengthy dialogue ensued. During
5 this discussion the judge asked [petitioner] on multiple occasions if he
6 still wanted to represent himself. [Petitioner] answered: "I'm not
7 willing," "Not really," and, finally "No."
8 After a bench trial the court found [petitioner] guilty of second
9 degree robbery, Penal Code section 211, and assault with a firearm,
10 section 245, subdivision (a)(2). The enhancement allegations of great
11 bodily injury under section 12022.7, subdivision (a) were found true as to
12 both counts and the enhancement allegation defendant "personally and
13 intentionally discharge[d] a firearm" under section 12022.53, subdivision
14 (c) was found true as to the robbery count. The court sentenced
15 [petitioner] on the robbery conviction to three years enhanced by an
16 additional 20 years for [petitioner's] personal and intentional discharge of
17 a firearm and enhanced for an additional three years for inflicting great
18 bodily injury on the victim. The court sentenced [petitioner] to an
19 additional seven years for assault with a firearm causing great bodily
20 injury. This sentence was stayed pursuant to section 654.
21 (Lodgment No. 13 at 2-3) (internal citations omitted.)

### IV. PETITIONER'S CLAIMS

1. The trial court violated petitioner's sixth and fourteenth amendment right to self-representation and due process when it improperly coerced petitioner to withdraw his *Faretta* motion.

2. Petitioner's conviction for assault with a firearm must be reversed because it is a lesser included offense of robbery, for which he was also convicted.

4

## V. STANDARD OF REVIEW

The standard of review applicable to petitioner's claims herein is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (Pub. L. No. 104-132, 110 Stat. 1214 (1996)). *See* 28 U.S.C. § 2254(d); *see also Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). Under the AEDPA, a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[1] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The phrase "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."[2] *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). However, a state court need not cite the controlling Supreme Court cases in its own decision, "so long as neither the reasoning nor the result of the state-court decision contradicts" relevant Supreme Court precedent which may pertain to a

---

[1] In addition, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

[2] Under the AEDPA, the only definitive source of clearly established federal law is set forth in a holding (as opposed to dicta) of the Supreme Court. *See Williams*, 529 U.S. at 412; *see also Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (citing *id.*). Thus, while circuit law may be "persuasive authority" in analyzing whether a state court decision was an unreasonable application of Supreme Court law, "only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

particular claim for relief. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam).

A state court decision is "contrary to" clearly established federal law if the decision applies a rule that contradicts the governing Supreme Court law or reaches a result that differs from a result the Supreme Court reached on "materially indistinguishable" facts. *Williams*, 529 U.S. at 405-06. A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal habeas court may not overrule a state court decision based on the federal court's independent determination that the state court's application of governing law was incorrect, erroneous, or even "clear error." *Lockyer*, 538 U.S. at 75-76. Rather, a decision may be rejected only if the state court's application of Supreme Court law was "objectively unreasonable." *Id.*

The record reflects that petitioner raised both grounds before the California Court of Appeal and the California Supreme Court. The California Court of Appeal denied relief by reasoned opinion. (Lodged Doc. No. 13.) The California Supreme Court thereafter summarily denied relief. (Lodged Doc. No. 15.) Because the California Court of Appeal's opinion is the last reasoned state-court decision on these grounds, it is that opinion which is the focus of the Court's review under the AEDPA. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991); *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citing *id*. at 803-04).

///
///
///

## VI. DISCUSSION

**A.    Self-Representation**

In Ground One, petitioner alleges that his withdrawal of his *Faretta* motion was ineffective. (FAP at 5-5A[3].) Petitioner contends that the trial court violated his sixth amendment right to self-representation and fourteenth amendment right to due process when it "coerced" him to withdraw the motion. (*Id.*)

### 1.   Applicable Legal Standards

The Sixth Amendment guarantees assistance of counsel to a criminal defendant at all critical stages of a prosecution. *See, e.g., Maine v. Moulton*, 474 U.S. 159, 168-70, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985); *Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir. 2007). *United States v. Springer*, 51 F.3d 861, 864 (9th Cir. 1995). Under the Sixth and Fourteenth Amendments, a defendant also may seek to represent himself, pursuant to what is referred to generally as a *Faretta* request. *See Faretta v. California*, 422 U.S. 806, 807, 818-19, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *see also Indiana v. Edwards*, 554 U.S. 164, 170, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008) ("The Court's foundational 'self-representation' case, *Faretta*, held that the Sixth and Fourteenth Amendments include a 'constitutional right to proceed *without* counsel when' a criminal defendant 'voluntarily and intelligently elects to do so.'") (quoting *Faretta*, 422 U.S. at 807) (emphasis in original)).[4]

The right to self-representation, however, is not absolute or automatic. *See Indiana*, 544 U.S. at 171. The defendant must "knowingly and intelligently" elect to conduct his own defense. *Faretta*, 422 U.S. at 835. The request must also be "unequivocal, timely, and not for purposes of delay." *Stenson*, 504 F.3d at 882. If the defendant "equivocates, he is presumed to have requested the assistance of counsel."

---

[3]   Petitioner attaches three unnumbered pages to the First Amended Petition. Because the pages are between pages five and six of the First Amended Petition, the Court will reference these pages as 5A-5C.

[4]   *See also Patterson v. Illinois*, 487 U.S. 285, 292-94, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988); *Lopez v. Thompson*, 202 F.3d 1110, 1117 (9th Cir. 2000) (en banc) (noting a defendant's "correlative right to waive assistance of counsel [under the Sixth Amendment] and represent himself").

*Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989). Thus, in order to determine whether to grant a *Faretta* request, a court will generally consider three factors: (1) the timing of the request; (2) the manner in which the request was made; and (3) whether the defendant repeatedly made the request. *Stenson*, 504 F.3d at 882. In reviewing such claims in a federal habeas petition, courts will give "significant deference to the trial court's factual findings." *Id.*

### 2. The California Court of Appeal's Opinion

The California Court of Appeal denied petitioner's claim that the withdrawal of his *Faretta* motion was involuntary and a result of improper coercion. (Lodged Doc. No. 13 at 4-8.) The California Court of Appeal determined that petitioner did not make an unequivocal request, stating:

> [Ten] days before the trial [petitioner] made a *Marsden* motion which the court denied. [Petitioner] then promptly made a *Faretta* motion. The court gave [petitioner] a form entitled "Petition to Proceed in Propria Persona," which he was to read, fill out, and initial before the next day.
>
> [Petitioner] returned the next day with a partially completed form.[5] The trial court told [petitioner]: "If you choose to be your own lawyer in your own case it's not going [to] delay the case at all. We are going to go ahead on the schedule that we are on because your case is very old, and one of the restrictions of your being your own lawyer, to ask for it late in the game . . . you don't have any right to have the case continued to allow you to do anything different than what's already been done. This is an old case. And the importance of that is you know you're entitled to a speedy

---

[5] When [petitioner] returned to court the next day he had not initialed the form where it stated he understood the charges against him and the consequences. He was promptly given a copy of the charges after he had been asked if he had filled out the questionnaire and answered "yes."

trial. . . . [b]ut the people are also entitled to a speedy trial . . . the older the case gets, the harder it is to have a fair trial for both of you, you as the defendant, and for the people of the state of California."

The following colloquy then took place between the court and defendant.

Q. Have you filled out that questionnaire . . . and it's still your wish to be your own lawyer?

A. Yes, sir.

Q. [There] might be procedures or things done that you may not understand and it may be to your extreme disadvantage to get in the middle of a trial and have that happen. Do you understand? . . . You're willing to take that risk?

A. I understand . . . Actually I'm not willing 'cause if I can't get no time to really go over my case . . . It's just like I'm going in with a lose-lose situation.

Q. That's something [self representation] you're willing to risk on your own.

A. Not really, sir.

Q. [After closing statements] you don't get to say another word. That's the end of it. Then they go back and they come back in five minutes and they say guilty. Okay. Now that part at the end about finding you guilty I just threw that in there, but we really don't know what they will do . . . Is that something you want to do on your own?

A. No.

Q. After hearing everything I have said to you, and all of this, do you still want to go ahead with representing yourself?

A. No.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Q. I'm going to assume that you have withdrawn this request to represent you, Is that true?
A. Yes.

It is beyond dispute the trial court has a duty to inform [petitioner] of the disadvantages of self-representation. This duty is imposed by *Faretta* in which the Supreme Court held a criminal defendant has a Sixth Amendment right to self-representation. The court stated that before exercising this right [petitioner] "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Our Supreme Court, in *People v. Marshall*, subsequently addressed the self-representation issue and held a defendant must make a "knowing, voluntary, and unequivocal assertion of the right of self-representation." Indeed, "[c]ourts must indulge every reasonable inference against waiver of the right to counsel."

At no point during the proceedings in the present case did [petitioner] make a "knowing" and "unequivocal" assertion of his right to self representation. [Petitioner] contends he made a successful *Faretta* motion and was unlawfully coerced into withdrawing it.

While [petitioner] does not specifically cite to any point in the record where the motion became effective, the most probable point would be when the court asked: "Have you filled out that questionnaire . . . and it's still your wish to be your own lawyer?" and [petitioner] responded:
A. Yes, sir.

None of [petitioner's] actions or words created a response that could be classified as "knowing." Nor did they establish a record which showed "he [knew] what he was doing." When [petitioner] initially answered "yes" the judge had not yet gone through the questionnaire in

10

order to establish whether [petitioner] had actually read and understood the disadvantages to self-representation. Additionally, [petitioner] had not initialed the box which stated he understood the charges and their consequences. In light of the fact courts are to make every reasonable inference against waiver of the right to counsel, [petitioner] could not be said to have made his decision knowingly as he did not initial the box indicating he understood the charges against him.

Nor did [petitioner] make an unequivocal assertion of his right to self-representation. In *People v. Scott*, defendant made his *Faretta* motion immediately after the trial court denied his *Marsden* motion[.][] The court concluded "[defendant's] subsequent comments suggest he made the *Faretta* motion only because he wanted to rid himself of appointed counsel," and held the request for self-representation equivocal. Like the defendant in *Scott*, in the present case [petitioner's] statement to the court was equivocal because he made it in direct response to the denial of his *Marsden* motion.

[Petitioner] contends he was coerced into withdrawing his *Faretta* motion. He cites a number of cases in which a judge coerced a witness not to testify by threatening the witness with a charge of perjury. [Petitioner] improperly equates a court's coercion of a witness with the threat of a perjury charge to the court's informing the defendant of the disadvantages of self-representation. The two do not have the same coercive effect upon the targeted person. In the cases [petitioner] cites the threat was jail time. In the case at hand the comparable "threat" was retaining learned counsel; the two cannot be said to have the same impact. Informing [petitioner] of the pitfalls of self representation cannot be considered coercion. Coercion occurs when "the influences brought to bear upon the accused were 'such as to overbear petitioner's will to

resist'." The court's dialogue with [petitioner] in the present case cannot be said to have overborne [petitioner's] free will.

[Petitioner] attempts to distinguish his case from *People v. Snow* and *People v. Jenkins* - cases in which the courts did not find the defendants were coerced into withdrawing their *Faretta* motions. In *Snow* defendant claimed his "withdrawal was ineffective because it was motivated by confusion over whether the court was willing to appoint one of his current attorneys as advisory counsel and by counsel's unfulfilled promise to try to get him cocounsel status." However, "the court twice expressly stated that if defendant represented himself he could choose either [one of his current attorney's] as defendant's attorney should he desire to terminate his self-representation." In *Jenkins* the court warned defendant about the extraordinary amount of work he would have to do, what an "impossible situation" he would have to face, and the burden created by his lack of legal training. Defense counsel took the defendant aside and agreed additional time would be secured to complete an investigation the defendant wanted, and in return defendant agreed to withdraw his *Faretta* motion. The court held there was no coercion, "rather, the court properly advised defendant of the pitfalls of self-representation." Additionally the record established "defendant was satisfied that a continuance would provide adequate time for investigation."

The warning the defendant received in *Jenkins* is actually similar to the warning in the case before us. The court in the present case simply advised [petitioner] of the pitfalls of self representation. While the court may have been excessive in stating "[t]hen they go back and they come back in five minutes and they say guilty," the court quickly corrected itself and said: "Okay. Now that part at the end about finding you guilty I

> just threw that in there, but we really don't know what they will do." We hold the warning given to [petitioner] was not only adequate but of necessary severity due to the seriousness of the possible punishment facing the defendant, life in prison. We therefore conclude [petitioner] voluntarily withdrew his *Faretta* motion after being properly warned of the disadvantages of self-representation.

(Lodged Doc. No. 13 at 4-8) (internal quotation marks and citations omitted.)

### 3. Discussion

Here, the only factor at issue is whether petitioner's *Faretta* request was unequivocal. The record supports the Court of Appeal's finding that petitioner was not coerced into withdrawing his *Faretta* motion.

First, a request for self-representation must be evaluated in context. *See Robinson v. Kramer*, 588 F.3d 1212, 1218 (9th Cir. 2009) (requiring a fact-specific inquiry). Such request is considered equivocal when it is a "momentary caprice," "the result of thinking out loud," or an "impulsive reaction." *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). Here, during a *Marsden*[6] hearing, petitioner requested to replace his counsel because he felt that his counsel was unresponsive, not acting in his best interest, lying to him, and "not doing nothing at all." (Lodged Doc. No. 7 at E10-12.) The trial court determined otherwise and denied petitioner's *Marsden* motion. (*Id.* at E14-E16.) In response to the denial, petitioner immediately requested to represent himself. (*Id.* at E16.) As in *Jackson*, the request was an "impulsive reaction" to the court's denial of his *Marsden* motion. *Jackson*, 921 F.2d at 888-89; *see also United States v. Mendez-Sanchez*, 563 F.3d 935, 939 (9th Cir. 2009) ("A request to represent oneself made while at the same time stating a preference for representation by a different lawyer and rearguing the change of counsel motion is insufficient to invoke *Faretta*."). Petitioner's actions show that rather than possessing a genuine desire to

---

[6] *People v. Marsden*, 2 Cal. 3d 18 (1970) (requiring the courts to provide a party seeking substitution of counsel an opportunity to present argument or evidence).

13

represent himself, the motivation behind the *Faretta* request was out of frustration by his inability to replace his counsel. *See Jackson*, 921 F.2d at 889.

Second, after being advised of the dangers of self-representation, petitioner's statements further indicated that his request was equivocal. The Court of Appeal correctly notes that the trial court had the duty to advise petitioner of the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835. The trial court fulfilled this duty when it gave petitioner the form entitled "Petition to Proceed in Propria Persona," reviewed petitioner's responses the following day to confirm that petitioner's waiver of his right to counsel was knowingly made, and explained the dangers of self-representation. (Lodged Doc. No. 6 at E18-28-F; Lodged Doc. No. 7 at E16-E17.) The record indicates that petitioner did not understand the charges brought against him and possible consequences. When the trial court informed petitioner about the dangers of self-representation, petitioner expressed doubt about self-representation several times. Petitioner stated that he was not willing to take on the risks of self-representation when he learned that he would not have additional preparation time and there would be no co-counsel assisting him, and when he received a copy of the charges against him. (Lodged Doc. No. 6 at 13-F - 18-F.) None of petitioner's statements even suggest that his request was unequivocal. To the contrary, they demonstrate that petitioner's initial request was not knowing.

Further, petitioner's reliance on *People v. Snow*, 30 Cal. 4th 43 (2003), and *People v. Jenkins*, 22 Cal. 4th 900 (2000), to support his contention that the trial court coerced him into withdrawing his *Faretta* request is unavailing. Citation to these cases do not meet petitioner's burden of demonstrating that the court's finding that petitioner's request was equivocal was based on an unreasonable determination of the facts. As the Court of Appeal correctly notes, *Snow* and *Jenkins* do not support his argument that his withdrawal was ineffective. Neither case held that the trial court improperly coerced the defendants to withdraw their *Faretta* requests.

Neither petitioner nor the record demonstrates that petitioner made an unequivocal request for self-representation. The trial court reasonably cautioned petitioner of the dangers and pitfalls of self-representation and when presented with such reality, petitioner expressed that he wanted to withdraw his *Faretta* request. Accordingly, the Court of Appeal's decision was neither contrary to nor an unreasonable application of clearly established federal law.

**B.    Ground Two**

In Ground Two, petitioner argues that his conviction for assault with a firearm must be reversed because it is a lesser included offense of another conviction, second degree robbery with a true finding on the firearm use and great bodily injury enhancements. (FAP at 5, 5B-5C; Reply at 17-24.) Petitioner contends that multiple convictions may not be based on necessarily included offenses. (Reply at 17-24.)

**1.    The California Court of Appeal's Opinion**

In denying Ground Two, the Court of Appeal did not reach the merits. Rather, the Court of Appeal resolved the issue on other grounds:

> We need not resolve this issue in the present case because even if the enhancement allegations are considered part of the accusatory pleading of robbery there is an independent ground for upholding the convictions for both crimes.
>
> Here the facts show [petitioner] fired two rounds during the struggle with the victim. The first round scorched the victim and the second round hit the victim in the back. Firing two shots provides a basis for each offense to stand independently. Assault with a firearm can be upheld on the basis of the shot which only scorched the victim and the robbery with its firearm enhancements can be upheld on the basis of the shot which actually struck the victim in the back.

///
///

> Therefore we conclude under the circumstances of this case convicting [petitioner] of robbery and assault with a firearm did not violate the prohibition against multiple convictions.

(Lodged Doc. No. 13 at 9-10) (internal citations omitted.)

**2. Discussion**

Ground Two is not cognizable on federal habeas review. Habeas corpus relief is available only if the petitioner's conviction or sentence is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L.Ed. 2d 385 (1991). Petitioner does not allege any federal constitutional violation. Instead, petitioner alleges that his convictions violates California law.[7] (Reply at 17-24.)

---

[7] Since the Court of Appeal issued its opinion on petitioner's direct appeal, the California Supreme Court has addressed the "multiple conviction rule."

In California, a defendant "may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct." *People v. Reed*, 38 Cal. 4th 1224, 1226 (2006) (emphasis in original). *See* Cal. Penal C. §§ 954 (permitting multiple convictions) and 654 (prohibiting multiple punishments for the same act or omission). This is known as the multiple conviction rule. An exception to the multiple conviction rule is the prohibition of multiple convictions based on necessarily included offenses. *Id.* at 1227.

Traditionally, courts applied two tests, the accusatory pleading test and the elements test, in determining whether an *uncharged* offense is a necessarily included offense. *People v. Sloan*, 42 Cal. 4th 110, 117 (2007); *Reed*, 38 Cal. 4th at 1227. "Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former." *Sloan*, 42 Cal. 4th at 117; *Reed*, 38 Cal. 4th at 1227-28. Under the elements test, "if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former." *Sloan*, 42 Cal. 4th at 117; *People v. Izaguirre*, 42 Cal. 4th 126, 131 (2007); *Reed*, 38 Cal. 4th at 1227.

In *Reed*, the California Supreme Court held that "[c]ourts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted of an *uncharged* crime, but only the statutory elements in deciding whether a defendant may be convicted of multiple *charged*

(continued...)

1 Although petitioner mentions two United States Supreme Court cases, *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 524 U.S. 296, 124 S. Ct. 2531, 159 L.Ed. 2d 403 (2004), he only discusses *Apprendi* and the holding in *Apprendi* is inapposite to the issue raised here. In *Apprendi*, the Supreme Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Thus, elements of a sentence enhancement which increases the punishment must be proved beyond a reasonable doubt. *Id.*; *see also Izaguirre*, 42 Cal. 4th at 131. Petitioner, however, does not contend that the sentence enhancement was not submitted to the trier of fact and proved beyond a reasonable doubt. Accordingly, despite petitioner's discussion of *Apprendi*, its holding is inapplicable and petitioner does not allege a federal constitutional violation.

Moreover, as the Court of Appeal correctly recognizes, there is an independent ground for upholding petitioner's conviction for assault with a firearm. Petitioner fired two shots at the victim. The two shots provide a basis for the two convictions to stand independently. Thus, petitioner's situation does not implicate the multiple conviction rule.

---

[7](...continued)
crimes." *Id.* at 1231 (emphasis in original). The California Supreme Court subsequently held that the *Reed* decision means that courts may not consider enhancement allegations for purposes of the multiple conviction rule. *Sloan*, 42 Cal. 4th at 113; *Izaguirre*, 42 Cal. 4th at 128.

**RECOMMENDATION**

It therefore is recommended that the Court issue an order: (1) approving and adopting this Report and Recommendation; and (2) directing that judgment be entered denying the First Amended Petition on the merits with prejudice.

DATED: March 11, 2011

/ s / FREDERICK F. MUMM

FREDERICK F. MUMM
United States Magistrate Judge

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but are subject to the right of any party to timely file Objections as provided in the Local Rules Governing the Duties of the Magistrate Judges, and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.